248 So.2d 19 (1971)
James H. WARE, Jr., et al.
v.
Harvey W. CANNON, Jr., et al.
No. 8423.
Court of Appeal of Louisiana, First Circuit.
April 19, 1971.
Rehearing Denied May 31, 1971.
*20 Donald C. Theriot, Baton Rouge, for appellants.
Joseph F. Keogh, City-Parish Atty., and Ed V. Fetzer, Asst. Parish Atty., Baton Rouge, for appellees.
Before LANDRY, ELLIS and BLANCHE, JJ.
Rehearing En Banc Denied May 31, 1971.
ELLIS, Judge.
Plaintiffs herein are seeking a writ of mandamus to compel the City-Parish Council of the City of Baton Rouge and the Parish of East Baton Rouge to call an election under the provisions of Section 11.09 of the Plan of Government of the City-Parish. Section 11.09 provides as follows:
"Amendments of this plan of government may be proposed by majority vote *21 of all the members elected to the parish council or by a petition containing the full text of the proposed amendment signed by qualified voters of East Baton Rouge Parish in number equal to ten per cent of the number of votes cast for sheriff at the last preceding election of parish officers and filed in the office of the parish clerk. A proposed amendment shall be submitted by the parish council to the qualified voters of the parish at a special election to be called and held by the parish council not less than sixty nor more than ninety days after the passage of the amendment by the parish council or the filing of the petition; provided, that if a state or congressional primary or election falls within the above period the special election may be held in connection with such primary or election."
Plaintiffs herein presented such a petition, signed by the requisite number of voters, containing the following proposed amendment:
"Section 3.05. Limitation on Power to Levy Taxes. The rate of taxation under this plan of government shall be limited to the rate in force on December 1, 1969, and no new tax, nor increase in presently authorized tax, shall be added or applied, unless authorized by a majority of those voting in an election called for that purpose."
The City-Parish Council did not call the election, and this suit followed. From an adverse judgment, plaintiffs have appealed.
The district judge found that, despite the mandatory language of Section 11.09, supra, the Council had discretion to refuse to call the election if the amendment was invalid, and that mandamus will not lie to compel the performance of a discretionary act. He also found that the Plan of Government is procedural in nature, and was not intended to change the manner in which the substantive powers of government are vested.
Plaintiffs' specifications of error allege that the court was wrong in all respects.
They first claim that, in the light of the mandatory language of Section 11.09, the City-Parish Council is without discretion to refuse to call the election as therein provided. They cite a number of out-of-state authorities in support of their position. Our Supreme Court considered the identical question in the case of State ex rel. Bussie v. Fant, 216 La. 58, 43 So.2d 217 (1949), and, in connection therewith, said:
"In support of the exception of no cause of action, respondents urge that the writ of mandamus should not issue commanding the city council to call such an illegal election, for the proposed ordinance, if it should be enacted at such illegal election, would be invalid; that under no circumstances should a writ issue commanding respondents to do an illegal act and a vain and useless thing.
"As a general proposition of law, the validity or constitutionality of an ordinance will not be determined or passed on by a court until the ordinance is adopted. In the instant case, however, relators seek by mandamus the right to have submitted to the electors an ordinance which, if adopted, would be invalid. Under these circumstances, the validity of the ordinance should be determined by the court, and, if it is found to be illegal or unconstitutional, the right to the writ of mandamus should be denied. This is the better and sounder doctrine, and has been recognized by text-writers and the courts of this country."
The clear implication to be drawn from the foregoing is that the Council has the discretion to refuse to call an election for an invalid ordinance.
Of course, at the time the above decision was rendered, the Code of Civil Procedure now in effect had not been adopted. At that time, mandamus could be used to enforce the performance of a discretionary act, when there has been an *22 abuse of discretion. Since the adoption of the Code, we have held that mandamus will not lie to compel the performance of a discretionary act, no matter how flagrant an abuse of that discretion might exist. Article 3863, Code of Civil Procedure; State ex rel. Hayes v. Louisiana State Board of Barber Examiners, 208 So.2d 369 (La.App. 1 Cir. 1968), writ refused 252 La. 169, 210 So.2d 53 (1968); Bussie v. Long, La., 243 So.2d 776 (1971). We are therefore of the opinion that the Council has the discretion to refuse to call an election for the adoption of an ordinance which it finds to be invalid and that mandamus is not the proper remedy to compel the calling of the election under the holding of the above jurisprudence.
However, because of the possibility that the pronouncement of the Fant case, supra, may still be effective, we will consider the third specification of error, which relates to the constitutionality of the proposed amendment.
The Plan of Government was adopted by the people of the Parish of East Baton Rouge pursuant to the mandate contained in Article XIV, Section 3(a) of the Constitution of 1921. Subsection (2) thereof reads as follows:
"Subject to the constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the Parish, such plan of government may provide * * *."
Article X, Section 1 of the Constitution confers the power of taxation on the State Legislature. Article X, Section 5, authorizes the Legislature to confer the power of taxation on parochial and municipal corporations. The Legislature has exercised this authority in a number of acts. See R.S. 33:1236(7), R.S. 33:2621, R.S. 33:2711, R.S. 33:2741. The Council of the City of Baton Rouge derives its powers of taxation from its charter, Act 169 of 1898, Sections 20, 28, and 31. Limitations on the power of taxation are imposed by Article XIV, Sections 11 and 12 of the Constitution and R.S. 33:2801.
In Sections 3.01 and 3.02 of the Plan, the powers of the Councils are defined as those enjoyed by the former governing bodies of the Parish and City, except for certain transfers of authority not pertinent here. The Plan further identifies, in Chapter 1 thereof, the units of government affected thereby to be the Parish, the City of Baton Rouge, certain special districts, and the municipalities of Zachary and Baker.
The question presented is whether the incorporation by reference of these powers in the Plan of Government (particularly the power to tax set forth in Section 3.04) confers upon the people the right to limit, change or assume unto themselves these powers by means of the referendum procedures included in Section 11.09. We think it clear that before the adoption of the Plan, no such authority rested in the people, but was purely the province of the State Legislature.
In our opinion, the Plan of Government must be read in conjunction with the enabling amendment, and the effect to be given to the Plan is limited thereby. The Plan is "subject to the Constitution and laws of this State with respect to the powers and functions of local government."
La Fleur v. City of Baton Rouge, 124 So.2d 374 (La.App. 1 Cir. 1960), defined these terms as follows:
"We hold that the term `power' as used in the constitutional Article in question refers primarily to ability or capacity, which in our opinion is synonymous with inherent or basic authority to indulge in a particular undertaking or provide or perform a certain service.
"`Function', however, as used in the aforementioned constitutional provision, may be likened to duty in the sense that *23 it is complementary of the power (ability) conferred and, as such, is taken to mean onus or obligation to execute the power granted.
"On the other hand, `structure' and `organization' and `distribution of powers and functions' relate not to ability, capacity, duty, onus or obligation to perform but to supervision, control and internal arrangement of the component parts of the mechanism or instrumentality through which the power (ability) conferred is exercised in obedience to the function (duty) imposed."
We interpret Article XIV, Section 3(a) to mean that the Plan can neither augment nor limit these powers and functions. It can transfer them from one unit of government to another, or redistribute them among the units, but it cannot destroy or limit the power, nor can it confer it on one not previously entitled by law to the exercise thereof. Further, under the Plan, the people are not included as a unit of government.
We think that neither the Council nor the people have the authority to transcend the limits of the legislature and constitutional enactments relative to the powers and functions of the local governmental units involved, except for transfer or distribution thereof. Any attempt to do so exceeds the limitations placed on the Plan of Government by Article XIV, Section 3(a), and is, to that extent, unconstitutional. We find that the proposed amendment falls within the latter category.
Plaintiffs' procedural objection to the form of the exception is not well taken. Defendants may have characterized their exception to the mode of procedure as peremptory (no cause or right of action) but it is, in fact, a dilatory exception to the mode of procedure followed, and it will be treated as such by the courts.
The judgment appealed from is affirmed at plaintiffs' cost.
Affirmed.
LANDRY, Judge (dissenting).
The charter in question provides two separate but equal methods of amendment. One is by a majority vote of all members elected to the Council; the other a petition by the people. The charter likewise stipulates that a properly proposed amendment offered by the electorate SHALL (emphasis supplied) be submitted for popular vote. Beyond question, this language denotes that the duty to call the election is mandatory, not permissive or discretionary. To permit the governing council discretionary power to call such an election, as the majority view holds, would, in my judgment, defeat the clear legislative intent to provide two independent, effective and equal procedures for amending the charter in question.
The majority view relies upon State ex rel. Bussie et al. v. Fant, et al., 216 La. 58, 43 So.2d 217, as authority for the rule that in cases of this nature the governing authority is vested with discretion to refuse to call the election if, in the opinion of the governing body, the ordinance would be illegal. Obviously Fant, above, so holds, but not without limitation as the majority view suggests.
Fant is obviously based on the common law authorities therein cited and relied upon. At common law it has been held that an ordinance proposed by the people is presumed valid and the burden rests on the party alleging invalidity to establish the asserted illegality by clear and convincing proof. Johnson v. City of Astoria, 227 Or. 585, 363 P.2d 571.
Some of the common law authorities hold that where a petition for amendment is properly presented, the governing authority petitioned must call the election, and under no circumstances will the courts determine its validity until after the ordinance is adopted. Johnson v. City of Astoria, above. See also City of Rocky Ford v. Brown, 133 Colo. 262, 293 P.2d 974, and City of De Leon v. Fincher, Tex.Civ.App., 344 S.W.2d 743.
*24 The majority view, however, holds that if the proposed legislation is manifestly unconstitutional, or invalid on its face, the governing authority may decline to call the election. See McQuillin, Municipal Corporations, 1966 Revised Edition, Volume 2, The Municipal Charter, Sec. 9.27, page 707, et seq. (particularly page 711).
In Fant, the court held in effect that the ordinance was void on its face or manifestly invalid, consequently the governing body correctly refused to submit it to the electorate. I do not find that Fant, above, holds that under any and all circumstances a governing authority may refuse to submit an ordinance to the people because the ruling body thinks it is or may be unconstitutional. I find nothing in Fant, above, indicative of the rule proposed by the majority herein. Fant, above, held the proposed ordinance illegal because on its face it contained a prohibited dual proposition. The court in Fant, above, also held that the trial court correctly refused to issue mandamus because mandamus does not lie to compel performance of an illegal or unconstitutional act. I find nothing in Fant which says that the governing body is vested with discretion to call or not call an election proposed by petition of the people. The court in Fant did hold that where the ordinance is void on its face, the governing authority may fittingly decline to call the election. In my judgment, it is not a matter of discretion at all. Discretion involves a choice between two or more permissive courses. 2 Am.Jur.2d, Administrative Law, § 191, page 23. Discretion implies that the exerciser thereof enjoys the privilege of opting any of more than one legitimate selections. In cases of this nature, the governing authority has no discretion in the matter. If the proposed ordinance is legitimate on its face, it is not within the discretion of the governing body to call the election; it is the legal duty of the ruling body to call the election. On the other hand, if the proposed ordinance is manifestly or patently unconstitutional, that is, void on its face, it is likewise not within the discretion of the governing authority to refuse to call the election; it is the duty of the governing authority to decline calling an election that would be a nullity. It is not, however, within the authority of the governing body to challenge the validity of an ordinance so proposed where that invalidity does not appear on the face of the ordinance. If this were the rule, the legislative authority of the electorate could be successfully thwarted by an administrative authority which arrogates to itself the judicial function of determining the validity of an ordinance prior to its adoption.
In addition, I disagree with the majority holding that mandamus does not lie to compel a governing authority to call an election of this nature. The majority so find on the basis of LSA-C.C.P. art. 3863, as interpreted in State Ex Rel. Hayes v. Louisiana State Board of Barber Examiners, 208 So.2d 369. I do not find Hayes, above, pertinent in this instance because, as I have attempted to demonstrate herein, the City-Parish Council, in this instance, is not vested with discretion to call or not call the election. Moreover, Fant, above, would seem to set at rest the question of issuance of mandamus in cases of this nature. Fant, above, held that since the ordinance involved therein was void on its face, mandamus would not lie to call the election. The correlative of this position is that if the ordinance were not void, mandamus would issue to call the election. All jurisdictions, including our own, have historically and traditionally recognized mandamus as the proper procedure to compel calling elections where the governing authority charged with the obligation to hold the election has improperly declined to do so. It is my judgment that resort to ordinary processes in cases of this nature would unduly delay exercise of the electorate's right to referendum.
I believe that the requested writ of mandamus should issue in this instance.