MILLER, Judge.
The Alexandria City Council refused to accept the Charter Commission’s report and recommendation that an election be called to change the City’s form of government. The trial court granted mandamus ordering the city to advertise and call a charter election. We reverse.
Alexandria is presently governed by a Mayor and two Commissioners. The Charter Commission was created by unanimous action of the City Council on November 3, 1969 pursuant to the provisions of LSA-R.S. 33:1381 et seq. The Council appointed the Mayor as chairman of the Charter Commission and as required by LSA-R.S. 33:1383, the remaining four members were selected so that one would represent business, one would represent labor, one would represent the professions and one would represent veterans.
Within the year (as required by LSA-R.S. 33:1383), the Charter Commission submitted its recommendation for a home rule charter. Their proposal called for a Council-Manager form of government and the proposal was duly advertised. The election was called for February 2, 1971 and the Council-Manager form of government was rejected by a vote of 5211 to 5071.
A few days before that election, the Charter Commission member representing business died. Shortly after the election, the member representing labor resigned. These vacancies have not yet been filled although LSA-R.S. 33:1387 plainly requires that vacancies be filled by the governing authority of the municipality. On March 29, 1971 the Mayor moved (to the City Council) that Rev. C. J. Bell and Mrs. Gene Warren be appointed to fill the vacancies existing on the Charter Commission, but did not designate (as § 1383 requires) which, if either, person would represent labor or business. His motion died for lack of a second. On April 18, 1971 the Mayor moved to appoint Mrs. Gene Warren and Calvin Kelso to fill the vacan *395 cies, but did not designate which, if either, person would represent labor or business. Again the motion died for lack of a séc-ond. The City Council did not direct the Charter Commission to prepare another charter.
Nevertheless, the Charter Commission operated with three of its five members and prepared another home rule charter. On September 7, 1971 their plan calling for a strong mayor form of government (designated as a Mayor-Council) was presented to the City Council with the request that an election be called for February 1, 1972. The Mayor moved the adoption of the report. One of the City Commissioners moved that the Mayor’s motion be tabled and the Commissioner’s motion carried. On October 4, 1971, the Mayor again moved that the charter be presented to the electorate, but this motion failed for lack of a second.
On November 15, 1971, the City Commission passed a resolution over the May- or’s negative vote, stating (among other things) that “the legal status of the former Charter Commission is in question and doubt” and called for a public referendum to be held February 1, 1972 to determine whether the municipal government should be a “five man commission council” as desired by the two City Commissioners, or a “Mayor-Council”.
On December 16, 1971 the Charter Commission of the City of Alexandria and 21 residents, electors and taxpayers of the City brought this action to compel the City (by writ of mandamus) to publish the Charter Commission’s proposed charter and to call an election to submit the charter (calling for the Mayor-Council form of government) to the electors for their approval or disapproval. The Mayor’s answer requested the relief sought by the Charter Commission of which he is Chairman. The two City Commissioners filed exceptions and an answer alleging numerous grounds for contending that the Commission’s activities were not in accordance with the statute and were therefore null and void.
The exceptions and merits were tried on January 5, 1972 with the result that the “Council of the City of Alexandria (was) ordered to advertise the proposed charter submitted to them on September 7, 1971, in accordance with law, and after publication to call an election on that charter not earlier than sixty (60) days, nor more than ninety (90) days from the date of the finality of this, judgment.” Defendants City Commissioners appealed.
We pretermit consideration of all but one of defendants’ grounds for alleging invalidity of the Charter Commission’s proposal. We do not consider the remaining contentions.
Plaintiffs have been unable to establish that the Charter Commission can function with three members and without representatives from business and labor. LSA-R.S. 33:1383 requires that the Charter Commission be composed of five members. One member must represent business and one must represent labor. LSA-R.S. 33:1387 provides that “Any vacancy on said commission shall be filled by the governing authority of the municipality.” Mandamus is the proper remedy to compel the filling of vacancies.
Since the report of September 7, 1971 was submitted without benefit of “a representative of business” and “a representative of labor”, the report was improperly submitted. Both representatives are required by section 1383. The City Council’s finding that the report was improperly submitted was justified.
Mandamus may be used only to compel the performance of a purely ministerial duty. LSA-C.C.P. 3863. Mandamus is not the proper remedy to compel the city to call an election for the adoption of a charter which it justifiably finds to be improperly submitted. See Ware v. Cannon, 248 So.2d 19 (La.App. 1 Cir. 1971), writ *396 refused 259 La. 754, 252 So.2d 453 (1971). See also Bussie v. Fant, 216 La. 58, 43 So.2d 217 (1949).
The judgment of the trial court is reversed and set aside. Costs of court in the trial court and on appeal are assessed to plaintiffs appellees. The Charter Commission is relieved from paying costs except “stenographers’ costs for taking testimony.” LS4-R.S. 13:4521.
Reversed and rendered.